IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DONALD MURPHY | : | CIVIL ACTION |
| --- | --- | --- |
| v. | : | |
| ANDREW SAUL, Commissioner of Social Security[1] | : | NO. 18-4732 |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                               September 13, 2019

Donald Murphy ("Plaintiff") seeks review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") denying benefits is not supported by substantial evidence and will remand the case for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**I.    PROCEDURAL HISTORY**

Plaintiff filed for DIB and SSI on January 8, 2015, claiming that he became disabled on January 2, 2015, due to a heart condition. Tr. at 66, 67, 112, 116, 162, 166.[2] The applications were denied initially, id. 68-71, 72-75, and Plaintiff requested an administrative hearing before an ALJ, id. at 78-80, which took place on June 13, 2017.

---

[1]Andrew Saul became the Commissioner of Social Security ("Commissioner") on June 17, 2019. Mr. Saul should be substituted for the former Acting Commissioner, Nancy Berryhill, as the defendant in this action. F.R. Civ. P. 25(d).

[2]At the administrative hearing, Plaintiff testified that he was unable to work due to chest pain, breathing problems, arthritis in his back, and high blood pressure. Tr. at 37-38.

Id. at 27-53.  On August 16, 2017, the ALJ found that Plaintiff was not disabled.  Id. at 13-22.  The Appeals Council denied Plaintiff's request for review on September 5, 2018, id. at 1-3, making the ALJ's August 16, 2017 decision the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1472.

Plaintiff commenced this action in federal court on November 1, 2018.  Doc. 1. The matter is now fully briefed and ripe for review.  Docs. 11-13.[3]

## II.    LEGAL STANDARD

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for  . . not less than twelve months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process, evaluating:

> 1.     Whether the claimant is currently engaged in substantially gainful activity;
>
> 2.     If not, whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities;
>
> 3.     If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the "listing of impairments" ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;

---

[3]The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  See Standing Order, In RE:  Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018); Docs. 3, 4.

2

> 4. If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his past work; and
>
> 5. If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of his age, education, work experience, and RFC. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999). Therefore, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusions that Plaintiff is not disabled and is capable of performing jobs that exist in significant numbers in the national economy. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla." Zirnsak, 777 F.2d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). The court has plenary review of legal issues. Schaudeck, 181 F.3d at 431.

## III. DISCUSSION

### A. ALJ's Findings and Plaintiff's Claims

The ALJ found that Plaintiff suffered from several severe impairments at the second step of the sequential evaluation; hypertension, unstable angina, lumbar degenerative changes, gastroesophageal reflux disease ("GERD"), and hepatitis C. Tr. at 16. The ALJ next found that Plaintiff did not have an impairment or combination of impairments that met the Listings, id. at 17, and that Plaintiff retained the RFC to perform medium work, requiring lifting and/or carrying fifty pounds occasionally and twenty-five pounds frequently, with the ability to sit, stand, and walk for six hours each, push and/or pull as much as he can lift or carry, and frequently reach overhead bilaterally. Id. at 18. He must avoid climbing ladders, ropes, and scaffolds, can occasionally climb ramps and stairs, frequently balance, stoop, kneel, crouch, and crawl, but must avoid working at unprotected heights, and can work in humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme heat and cold occasionally. Id. At the fourth step of the evaluation, the ALJ found that Plaintiff could return to his past relevant work as an industrial truck operator. Id. at 21. Alternatively, the ALJ found, based on the testimony of a vocational expert ("VE"), that Plaintiff could perform work that exists in significant numbers in the national economy including jobs as a stores laborer or hand packager. Id. at 22.

Plaintiff claims that the ALJ failed to properly consider the opinion of his orthopedic surgeon, improperly gave great weight to the state agency non-examining physician, and failed to properly consider Plaintiff's obesity. Docs. 11 at 3-13, 13.

4

Defendant responds that the ALJ properly considered the medical opinions and evidence and Plaintiff failed to allege that his obesity affected his ability to work. Doc. 12 at 5-15.

B. **Summary of Medical Evidence**

Plaintiff began treating with Millen W. Gebreselassie, M.D., on January 2, 2015, with complaints of pain and burning in both hips radiating down his legs, and recurrent chest pain for two years that spontaneously resolves. Tr. at 247. Dr. Gebreselassie referred Plaintiff to cardiologist Benjamin Silverman, M.D., who noted Plaintiff's history of hypertension. Id. at 225. Dr. Silverman ordered a stress test and echocardiogram, id. at 226, which revealed a small defect consistent with gastrointestinal uptake. Id. at 230-31, 232-33. After Plaintiff underwent a colonoscopy, gastroenterologists Scott Myers, M.D., and Niren Jasutkar, M.D., diagnosed Plaintiff with GERD,[4] for which he was treated with Pepcid and was "doing better." Id. at 265.

Relevant to the issues presented in Plaintiff's brief, Plaintiff reported to Dr. Gebreselassie that he experienced back pain beginning in 2011, which radiated to his buttocks, his leg, and down to his toe. Tr. at 314. The doctor prescribed gabapentin[5] for the pain and referred him to Hahnemann Orthopedics and for pain management. Id. at

---

[4] GERD is any condition that results from gastroesophageal reflex, ranging in seriousness from mild to life-threatening and characterized by heartburn and regurgitation. Dorland's Illustrated Medical Dictionary, 32nd ed. (2012) ("DIMD"), at 533.

[5] Gabapentin is an anticonvulsant used to treat nerve pain. See https://www.drugs.com/gabapentin.html (last visited Aug. 19, 2019).

314, 434.⁶ On July 13, 2015, Wes Prokop, M.D., at Pain Care Professionals, observed pain and tenderness in Plaintiff's spine with moderately decreased range of motion in the lumbar area. Id. at 435. The doctor performed a sacral transforaminal steroid injection.⁷ Id. at 436.⁸

X-ray of the lumbar spine ordered by Dr. Gebreselassie, performed on July 15, 2015, showed "mild degenerative changes of the lumbar spine." Tr. at 407. An MRI of the lumbar spine ordered by Dr. Prokop and performed on August 18, 2015, showed "[m]ultilevel spondylosis of the lumbar spine," and "L5-S1 degenerative changes with right lateral recess effacement and encroachment of the traversing right S1 nerve root." Id. at 406.⁹ Specifically the MRI revealed disc bulges at L2-L3, L3-L4, L4-L5, and L5-S1, with the L5-S1 being the worst. Id.

On August 25, 2015, Hahnemann orthopedist Corey Ruth, M.D., diagnosed Plaintiff with L2-S1 lumbar bulging discs with spondylosis and lumbar radiculitis, and

---

⁶The treatment note indicates that the doctor referred Plaintiff to Hahnemann Orthodontics. However, in context, it is clear that this was a typographical error. Tr. at 314.

⁷A sacral transforaminal steroid injection is one that passes through the "natural opening or passage" in the sacrum, "the triangular bone just below the lumbar vertebrae." DIMD at 729, 1662.

⁸At the administrative hearing, Plaintiff testified that he received two injections from Dr. Prokop, but they caused diarrhea and stomach pain, so he stopped the treatment. Tr. at 41.

⁹As will be discussed later, this MRI is at the heart of Plaintiff's challenge to the ALJ's decision. Spondylosis is defined as degenerative spinal changes due to osteoarthritis. DIMD at 1754.

also cervical spondylosis.  Tr. at 403.[10]  On physical examination, the doctor noted lumbar spine tenderness, slight muscle spasm, and leg weakness.  Id.  In January 2016, Dr. Ruth also noted C3-C6 cervical spondylosis with cervical radiculitis.  Id. at 399.  On March 15, 2016, Dr. Ruth's physical examination revealed tenderness of the lumbar spine, slight muscle and leg weakness and Plaintiff reported slight pain with range of motion.  Id. at 370.  With respect to the cervical spine, the doctor noted tenderness, slight pain with range of motion, slight muscle spasm, and arm weakness.  Id. at 370.  The doctor repeated these findings in evaluations through April 11, 2017.  Id. at 373 (May 10, 2016), 376 (June 21, 2016), 379 (Aug. 9, 2016), 382 (Sept. 20, 2016), 385 (Nov. 15, 2016), 388 (Dec. 13, 2016), 391 (Jan. 31, 2017) 394 (March 7, 2017), 397 (April 11, 2017).

On April 11, 2017, Dr. Ruth completed a Medical Opinion Re:  Ability to Do Work-Related Activities, indicating that Plaintiff could lift and carry less than ten pounds, and could stand and walk for less than two hours and sit for about two hours in an eight-hour day.  Tr. at 363.  The doctor indicated that the limitations were related to "C4-C6 Bulging Disc/Spondylosis" and "Lumbar L2-S1 Bulging Disc/Spondylosis."  Id.

On April 20, 2015, Louis Tedesco, M.D., reviewed the record at the initial determination stage and found that Plaintiff suffered from hypertension, ischemic heart disease, and spinal disorders, but that these impairments were not disabling.  Tr. at 56-

---

[10]Radiculitis is "inflammation of the root of a spinal nerve, especially that portion of the root which lies between the spinal cord and the intervertebral canal."  DIMD at 1571.

59. Dr. Tedesco determined that Plaintiff could frequently lift/carry twenty-five pounds, occasionally lift/carry fifty pounds, stand and walk for six hours, and sit for six hours in an eight-hour day. Id. at 57.

### C. Other Evidence

Plaintiff was born on October 13, 1955. Tr. at 112, 116. He completed the tenth grade and has past work experience as an industrial truck/forklift operator and as a construction worker/laborer. Id. at 31, 32, 34-36, 48, 167. Plaintiff testified that he was fired from his last job in 2014 because he was moving too slowly, and he did not try to get another job because he was having chest problems and trouble breathing. Id. at 37. He also has back problems, chest pains, and high blood pressure. Id. at 38.

Plaintiff complained of pain in his shoulders and lower back pain, which he described as burning, that goes down his legs to his toes. Tr. at 43, 47. He also gets chest pain both on exertion and at rest, and suffers from shortness of breath when using stairs. Id. at 44. Plaintiff can stand for fifteen to twenty minutes before his back starts bothering him, and he can sit for forty minutes to an hour. Id. at 45. Plaintiff testified that he watches television practically all day while laying down because sitting bothers his chest and back. Id. at 39-40. When he gets tired of laying down, he walks around in the house. Id. at 40. Plaintiff's cousin does the cleaning and laundry because Plaintiff cannot lift. Id. at 46.

### D. Consideration of Plaintiff's Claims

#### 1. Consideration of Opinion Evidence

Plaintiff's first two claims focus on the ALJ's consideration of the opinions offered by Dr. Ruth, Plaintiff's treating orthopedist, and Dr. Tedesco, the state-agency reviewing physician who conducted a records review at the initial determination phase. Doc 11 at 3-11. Defendant responds that Dr. Ruth's opinions are inconsistent with the diagnostic and clinical tests, physical examinations, Plaintiff's conservative course of treatment, and Plaintiff's self-reported abilities and activities. Doc. 12 at 6-9.

Generally, the governing regulations dictate that an ALJ must give medical opinions the weight she deems appropriate based on factors such as whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the record as a whole. 20 C.F.R. §§ 404.1627(c), 416.927(c).[11] "The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Stewart v. Sec'y HEW, 714 F.2d 287, 290 (3d Cir. 1983)). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Id. (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).

As previously mentioned, Dr. Ruth completed an assessment of Plaintiff's ability to perform work-related activities on April 11, 2017, finding that Plaintiff was limited to

---

[11]Although the regulations governing the consideration of medical evidence have been amended, I rely on the regulations in effect for claims filed prior to March 27, 2017.

lifting and carrying less than ten pounds, and to sitting for about two hours, and standing and walking less than two hours, in an eight-hour day. Tr. at 363. The ALJ gave little weight to Dr. Ruth's opinions.

> I note that in a letter dated August 25, 2015, Dr. Ruth's impression was that [Plaintiff] had L2-S1 lumbar bulging discs with spondylosis and lumbar radiculitis, as well a cervical spondylosis. However, the impression has no support from objective findings. Specifically, there are no EMGs, MRIs and x-rays showing more than mild findings. [Plaintiff] had his first visit to a pain center on September 15, 2015 and the findings noted in the report, including ambulatory difficulties, are found nowhere else in the medical evidence of record. Thus, the findings are questionable. This report also includes the impression, radiculopathy and stenosis; however, there is no MRI or EMG of record that revealed those findings. These findings, too, are questionable. I did consider that a physical examination on March 15, 2016, found tenderness to palpation of the lumber spine, tenderness over the cervical spinous processes, slight pain with range of motion, and slight muscle spasm with arm weakness at times. ([Tr. at 224, 247, 370, 403, 405-07, 431-32, 441]). However, this does not confirm the presence of cervical and/or lumbar radiculopathy.
> . . . .
> I give *little* weight to the opinion of Corey Ruth, M.D., that [Plaintiff] is limited to less than sedentary exertion with many non-exertional limitations and multiple absences ([tr. at 363-64]), as the objective evidence and clinical findings have not revealed such degree of severity this doctor identified. For example, [Plaintiff's] treatment has been conservative. Additionally, musculoskeletal examination findings have included normal gait and stance, normal strength and tone (id. at 431-94]).

Tr. at 19-20 (emphasis in original). In response to Plaintiff's brief and statement of issues, Defendant reiterates the ALJ's finding that "the objective evidence failed to

10

support Dr. Ruth's listed reasons – cervical and lumbar bulging discs/spondylosis." Doc. 12 at 6.

The ALJ's consideration of Dr. Ruth's assessment is problematic for several reasons. First, to the extent the ALJ states that there is no objective support for Dr. Ruth's impression of L2-S1 bulging discs with spondylosis, she is wrong. The August 18, 2015 MRI clearly states that Plaintiff suffered from four bulging discs from L2 to S1 and multilevel spondylosis. Tr. at 406.

Second, to the extent the ALJ characterizes this MRI as showing no more than mild findings, she has overlooked specific findings in the MRI report. The ALJ states that the August 18, 2015 MRI "revealed multilevel spondylosis, along with degenerative changes at L5-S1." Tr. at 19.[12] However, as previously discussed, the MRI revealed multilevel disc bulging and, at L5-S1, the disc bulge resulted in "right lateral recess effacement encroaching the traversing right S1 nerve root." Id. at 406. The ALJ fails to acknowledge the evidence indicating encroachment on the nerve root.[13]

Moreover, the ALJ questions Dr. Prokap's initial impression of radiculopathy and stenosis, indicating that "there is no MRI or EMG of record that revealed those findings."

---

[12]This portion of the ALJ's analysis seems inconsistent with her statement in the same paragraph that Dr. Ruth's findings, including spondylosis, "[have] no support from objective findings." Tr. at 19.

[13]Defendant completely overlooks the findings of this MRI, endorsing the ALJ's finding that the "objective evidence failed to support . . . cervical and lumbar bulging discs/spondylosis." Doc. 12 at 6. Defendant characterized the MRI as "reveal[ing] only mild degenerative changes without direct effect on a nerve root." Id. In contrast to these statements, the MRI revealed lumbar bulging discs from L2 to S1 and spondylosis and encroachment on the S1 nerve root. Tr. at 406.

Tr. at 19. Contrary to the ALJ's conclusion, the August 18, 2015 MRI clearly indicates spinal stenosis at L3-L4, L4-L5, and L5-S1. Id. at 406.

Finally, in rejecting Dr. Ruth's assessment, the ALJ noted that "musculoskeletal examination findings have included normal gait and stance, normal strength and tone." Tr. at 20. The notes to which the ALJ referred are from Plaintiff's gastroenterologist, id. at 415 (June 29, 2016), and cardiologist. Id. at 425 (Feb. 22, 2016), 474 (Sept. 19, 2016), 477 (Mar. 18, 2016), 483 (Aug. 26, 2015). However, the musculoskeletal examinations conducted by Plaintiff's treating orthopedist and pain management specialist consistently revealed pain, spasm, and reduced range of motion. For example, Dr. Ruth's physical examinations consistently revealed tenderness of the cervical and lumbar spine, sacroiliac joints, pain on range of motion, and slight muscle weakness in the legs, and slight muscle spasm with arm weakness. Id. at 403 (Aug. 25, 2015), 402 (Sept. 22, 2015), 401 (Oct. 27, 2015), 400 (Dec. 1, 2015), 399 (Jan. 19, 2016), 370 (Mar 15, 2016), 376 (June 21, 2016), 379 (Aug. 9, 2016), 382 (Sept. 20, 2016), 385 (Nov. 15, 2016), 388 (Dec. 13, 2016), 391 (Jan. 31, 2017), 394 (Mar. 7, 2017), 397 (Apr. 11, 2017). Similarly, Dr. Prokop noted that the strength in both of Plaintiff's legs was 4/5, he had reduced deep tendon reflexes, and his range of motion was decreased. Id. at 432. The doctor found pain and tenderness in the spine with range of motion of the lumbar area moderately reduced. Id.

In contrast to the little weight given to Dr. Ruth's assessment, the ALJ gave great weight to the opinion of Dr. Tedesco, the state agency consultant, who opined, based on his review of the records, that Plaintiff could occasionally lift fifty pounds and frequently

12

lift twenty-five pounds, and could stand and walk for six hours, and sit for six hours, in a workday. Tr. at 57.

> As for the opinion evidence, I give *great* weight to the
> opinion of the State agency medical consultant, Louis
> Tedesco, M.D., to the extent that I agree with his assessment
> that [Plaintiff] is limited to a range of medium exertion ([tr. at
> 54-65]). This conclusion is reasonably supported by the
> overall evidence. I clarify that I am adding non-exertional
> limitations that Dr. Tedesco did not identify, as he did not
> have access to evidence received at the hearing level.
> Overall, the objective evidence and clinical findings –
> as previously discussed – do not show limitations beyond the
> ones identified in my assessment of [Plaintiff's RFC].

Id. at 20 (emphasis in original).

While it is true that "Social Security regulations impose no limit on how much time may pass between a report and the ALJ's reliance on it," Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011), the timing is important here because Dr. Tedesco did not have the benefit of the records from Dr. Ruth at Hahnemann Orthopedics, the August 18, 2015 MRI, or Dr. Prokop's treatment records. In sum, the bulk of Plaintiff's orthopedic treatment post-dated Dr. Tedesco's records review.

Because, in considering the opinion evidence, the ALJ mischaracterized or ignored the findings of the August 18, 2015 MRI, and relied on the state agency consultant who did not have the benefit of the bulk of Plaintiff's orthopedic testing and treatment, I will remand the case for further consideration of the medical evidence relating to Plaintiff back and neck impairment.[14]

---

[14]Defendant contends that "Plaintiff's argument that the ALJ substituted her lay interpretation of the August 2015 lumbar spine MRI by stating it showed only mild

2.  <u>Obesity</u>

Plaintiff also claims that the ALJ failed to properly consider the impact of Plaintiff's obesity on his ability to perform medium work. Doc. 11 at 11-13. Plaintiff relies on Social Security Ruling ("S.S.R.") 02-1p, which requires that an ALJ consider whether obesity causes any functional limitations, alone or in combination with other impairments, noting that "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." S.S.R. 02-1p, "Titles II and XVI: Evaluation of Obesity," 2002 WL 34686281, at *6 (2002). The Ruling also requires ALJs to explain how they reached a conclusion as to whether obesity causes any physical or mental limitation. <u>Id.</u> at *7. Defendant responds that the ALJ committed no error because Plaintiff did not specify how obesity affected his ability to work. Doc. 12 at 13.

Because I have found that the case must be remanded for further consideration of the evidence regarding Plaintiff's back and neck impairments, I also direct Defendant to consider the impact of Plaintiff's obesity in determining his RFC.

---

degenerative changes and no direct effect on a nerve root . . . is belied by the record," and proceeds to refer to "[t]he radiologist's impression" that there was "[n]o evidence of fracture or malalignment. Mild degenerative changes of the lumbar spine." Doc. 12 at 11 (citing <u>tr.</u> at 407). Defendant confuses two studies, the MRI of the lumbar spine on August 18, 2015, <u>tr.</u> at 406, and the x-ray of the lumbar spine conducted a month prior. <u>Id.</u> at 407. Robert Koenigsberg, M.D., read the MRI and compared it with the earlier x-ray, whereas Ira Stark, D.O., read only the x-ray.

## IV. CONCLUSION

The ALJ's consideration of the opinion evidence offered by Plaintiff's treating orthopedist is flawed, requiring remand of the case. On remand, Defendant shall also consider the impact of Plaintiff's obesity on his RFC.

An appropriate Order follows.